**No. 23-15499**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

YUROK TRIBE, et al.,

*Plaintiffs and Appellees,*

v.

KLAMATH WATER USERS ASSOCIATION, et al.,

*Defendant and Appellants.*

---

On Appeal From the United States District Court
for the Northern District of California
Case No. 3:19-cv-04405-WHO (Hon. William H. Orrick)

---

**BRIEF OF AMICI CURIAE IN SUPPORT OF DEFENDANTS-APPELLANTS**

---

MEREDITH E. NIKKEL (Bar No. 254818)
SAMUEL BIVINS (Bar No. 300965)
NICOLAS CHAPMAN (Bar No. 340661)
DOWNEY BRAND LLP
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone: 916.444.1000
Facsimile: 916.444.2100

*Attorneys for the* ASSOCIATION OF
CALIFORNIA WATER AGENCIES *and
the* CALIFORNIA FARM BUREAU
FEDERATION

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure, rules 26.1 and 29(a)(4)(A), *amici curiae* Association of California Water Agencies and the California Farm Bureau Federation certify that they have no parent corporation, and no publicly held corporation owns 10% or more of any stock that they have issued.  In addition, the Sacramento River Settlement Contractors Corporation contributed funds to the preparation of this brief.  The Sacramento River Settlement Contractors Corporation certifies that it has no parent corporation, and no publicly held corporation owns 10% or more of any stock it may have issued.

DATED:  October 23, 2023          DOWNEY BRAND LLP

By:    */s/ Meredith E. Nikkel*
MEREDITH E. NIKKEL
*Attorneys for* ASSOCIATION OF
CALIFORNIA WATER AGENCIES *and
the* CALIFORNIA FARM BUREAU
FEDERATION

1890849v11

## **FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(4)(E) COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure, rule 29(a)(4)(E), no party's counsel authored the brief in whole or in part and no party or party's counsel contributed funds towards the preparation of the brief. The Sacramento River Settlement Contractors Corporation contributed funds towards the preparation of this brief.

DATED: October 23, 2023      DOWNEY BRAND LLP

By: _/s/ Meredith E. Nikkel_____
MEREDITH E. NIKKEL
*Attorneys for* ASSOCIATION OF
CALIFORNIA WATER AGENCIES *and
the* CALIFORNIA FARM BUREAU
FEDERATION

1890849v11

## TABLE OF CONTENTS

I.     INTERESTS OF THE AMICI CURIAE ......................................................5

II.    SUMMARY OF ARGUMENT....................................................................7

III.   ARGUMENT...............................................................................................8

    A.    Principles of Cooperative Federalism Require Adherence to
        State Water Law. .............................................................................8

        1.    Congress expressly directs Reclamation to implement
              federal water projects in compliance with state water law.......10

        2.    The Endangered Species Act does not repeal the
              Reclamation Act of 1902. ........................................................13

    B.    The District Court's Holding Threatens Dramatic Implications
        For Reclamation Contracts Throughout California and the
        West. .............................................................................................17

IV.    CONCLUSION...........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*California v. United States*,
438 U.S. 645 (1978)...................................................................*passim*

*Kansas v. Colorado*,
206 U.S. 46 (1907).........................................................................10

*Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
70 F.4th 582 (D.C. Cir. 2023)......................................................16

*Nat'l Ass'n of Home Builders v. Def. of Wildlife*,
551 U.S. 644 (2007)................................................................*passim*

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
524 F.3d 917 (9th Cir. 2008) .......................................................14

*Natural Res. Def. Council v. Norton*,
236 F. Supp. 3d 1198 (E.D. Cal. 2017) ........................................19

*Natural Resources Defense Council v. Jewell*,
749 F.3d 776 (9th Cir. 2014) ....................................................7, 16

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
747 F.3d 581 (9th Cir. 2014) ............................................14, 15, 17

*Stockton East Water Dist. v. U.S.*,
583 F.3d 1344 (Fed. Cir. 2009) ...............................................18, 19

*United States v. Rio Grande Dam & Irrig. Co.*,
174 U.S. 690 (1899).......................................................................10

*United States v. State of California, State Water Resources Control
Bd.*,
694 F.2d 1171 (9th Cir. 1982) ......................................................13

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and
Products Liability Litigation*,
959 F.3d 1201 (9th Cir. 2020) ........................................................8

**Federal Statutes**

43 U.S.C.
§§ 411, 419 (2023).................................................................17
§§ 419, 423e, 485h(e) (2023)................................................18

Clean Air Act, 42 U.S.C.
§§ 7401 *et seq.* (2023).............................................................8

Clean Water Act, 33 U.S.C.
§§ 1251 *et seq.* (2023).............................................................8

Endangered Species Act...................................................... 7, 13, *passim*

Reclamation Act of 1902, Chapter 1093
§ 8, 32 Stat. 390, 43 U.S.C. § 383 (2023)....................................11, 12

Reclamation Act of 1902, Chapter 1093
§ 4, 32 Stat. 389 (1902).........................................................17

Reclamation Act of 1902, Chapter 1093
§ 2, 32 Stat. 388 (1902).........................................................10

Tucker Act, 28 U.S.C.
§ 1491(a)(1) (2023)..............................................................18

**Other Authorities**

Erin Ryan, *Negotiating Federalism*, 52 B.C. L. Rᴇᴠ. 1 (2011)................................9

Federal Rules of Appellate Procedure

29(a)(2) ........................................................................5

32(a)(5) .......................................................................21

32(a)(6) .......................................................................21

32(a)(7)(B) ....................................................................21

32(a)(7)(B)(iii) ...............................................................21

32(a)(7)(C), I..................................................................21

26.1 and 29(a)(4)(A) ...................................................................1, 8, 9

*About the Central Valley Project*, UNITED STATES BUREAU OF
    RECLAMATION (Aug. 24, 2022)
    https://www.usbr.gov/mp/cvp/about-cvp.html ...................................17

*About Us: Fact Sheet*, UNITED STATES BUREAU OF RECLAMATION
    (accessed on October 19, 2023)
    https://www.usbr.gov/main/about/fact.html ......................................11

*Columbia-Pacific Northwest Region*, UNITED STATES BUREAU OF
    RECLAMATION (May 11, 2023)
    https://www.usbr.gov/pn/about/index.hmtl ......................................17

James Gordley, *The Myth of "Expectation Interest"* .............................19

Joshua D. Sarnoff, *Cooperative Federalism, the Delegation of*
    *Federal Power, and the Constitution*, 39 ARIZ. L. REV. 205, 213
    (1997) ..............................................................................................9

L.L. Fuller & William Perdue, Jr., *The Reliance Interest in Contract*
    *Damages*, 46 YALE L.J. 52, 58 (1936) ..............................................18

*Projects & Facilities: California*, UNITED STATES BUREAU OF
    RECLAMATION, (accessed on October 19, 2023)
    https://www.usbr.gov/projects/facilities.php?state=California. ...........6

RECLAMATION OF ARID LANDS H.R. REP. NO. 794 (1902) ...............10, 11

*Report on the Lands of the Arid Region of the United States* (2d. Ed.,
    1878) https://pubs.usgs.gov/unnumbered/70039240/report.pdf........10

Restatement (Second) of Contracts § 344..............................................18

Richard Roos-Collins, *Voluntary Conveyance of Water Project*
    *Rights*, 13 ECOLOGY L. Q. 733, 834–35 (1987)...................................14

## I.  INTERESTS OF THE AMICI CURIAE

The *Amici Curiae*—the Association of California Water Agencies ("ACWA") and the California Farm Bureau Federation ("Farm Bureau") (collectively "*Amici*")—are leading voices in western water policy.[1]  ACWA is a California non-profit mutual benefit corporation comprised of over 460 public water agency members.  It is the largest statewide coalition of public water agencies in the United States.  ACWA's members include cities, municipal water districts, irrigation districts, water districts, water storage districts, and county water districts, who are collectively responsible for ninety percent of the water delivered to agricultural, domestic, and industrial beneficial uses in California.

The Farm Bureau is a non-governmental, non-profit, voluntary membership California corporation whose purpose is to protect and promote agricultural interests throughout the State of California and to find solutions to the problems of the farm, the farm home, and the rural community.  The Farm Bureau is California's largest farm organization, comprised of 53 county Farm Bureaus currently representing approximately 29,000 members in 56 counties.  The Farm Bureau strives to protect and improve the ability of farmers and ranchers engaged in production agriculture

---

[1] Pursuant to F.R.A.P. rule 29(a)(2), the *Amici* sought and received consent from all the parties in this matter to file this brief of *amici curiae*.

to provide a reliable supply of food and fiber through responsible stewardship of California's resources.

The Farm Bureau has members who farm on lands within the Klamath Basin, including members of the Siskiyou County Farm Bureau and its Modoc County Farm Bureau. Currently, the Siskiyou County Farm Bureau counts approximately 266 members, and the Modoc County Farm Bureau counts approximately 166 members. Some of these members could be materially affected by the outcome of this case.

Many of the water supply portfolios of the *Amici*'s members depend either in whole or in part on water supply contracts with the United States Bureau of Reclamation ("Reclamation"). Indeed, California is home to nineteen different Reclamation projects that developed all the major surface water streams and rivers in California.[2] These include the Central Valley Project, the All American Canal System, the Cachuma Project, the Santa Maria Project, the Friant Division Project, the Solano Project, and the New Melones Project, among many others. *Id*. These projects supply water for irrigation, municipal, and industrial beneficial uses across the entire state, benefiting communities in the Sacramento and San Joaquin Valleys, the San Francisco Bay Area, the South Coast, and the Imperial Valley. *Id*.

---

[2] *Projects & Facilities: California*, UNITED STATES BUREAU OF RECLAMATION, (accessed on October 19, 2023)
https://www.usbr.gov/projects/facilities.php?state=California.

*Amici curiae* support Defendant-Appellants Klamath Water Users Association, et al., by alerting this Court to the critical risks to water supply availability throughout California that arise from the decision by the United States District Court for the Northern District of California ("Trial Court"). First, the Trial Court's decision ignores important precedent recognizing Congress's preference for cooperative federalism and deliberate deference to state water law regarding the operation of federal reclamation projects. Second, the Trial Court's decision erodes the stability of federal contracts, depriving federal water supply contractors of the contractual benefits for which they bargained. *Amici* respectfully request that this Court effectuate Congress's express intent that state water law control Reclamation project operations and reverse the Trial Court's implicit repeal of Congress's mandatory directive that Reclamation operate its projects in conformity with state law.

## II.   <u>SUMMARY OF ARGUMENT</u>

The Trial Court made a fundamental error in analyzing whether the Endangered Species Act ("ESA") preempts state law. 1-KWUA_ER-0028:14–29:12. Instead of analyzing the "complicated set of federal and state laws" (*Natural Resources Defense Council v. Jewell*, 749 F.3d 776, 785 n. 1 (9th Cir. 2014)) that govern Reclamation projects, the Trial Court relied on a facile Supremacy Clause analysis to avoid wrestling with how the Reclamation Act of 1902 ("1902 Act") and

state law cabin Reclamation's discretion in operating the Klamath Project. 1-KWUA_ER-0031:14–39:18. The Trial Court's failure to conduct a detailed, surgical Supremacy Clause analysis of whether Reclamation's ESA obligations conflicted with its obligations under state law and legally-binding water contracts threatens significant harm to the public, including cities, farms, and other western water users. The Trial Court's decision should be reversed.

### III. ARGUMENT

### A. Principles of Cooperative Federalism Require Adherence to State Water Law.

Every preemption analysis begins with the proposition that there is a strong presumption against preemption in areas of historic state police power, particularly in cooperative federalism schemes. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 959 F.3d 1201, 1211 (9th Cir. 2020). Congress will often intentionally defer to state laws when both the state and federal government have regulatory authority by enacting cooperative federalism statutes. *See, e.g.* Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* (2023); Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* (2023). Our republic is a federal democracy, and Congress may defer for sound political reasons, as "federal legislators elected by state citizens may feel obligated to preserve and protect traditional state regulatory roles because state citizens prefer state regulation." Joshua D. Sarnoff, *Cooperative Federalism, the Delegation of Federal Power, and the Constitution*, 39 ARIZ. L. REV. 205, 213

(1997); *see, e.g.*, *California v. United States*, 438 U.S. 645, 663–64 (1978) ("the Republicans specifically recommended that the Reclamation program reserve control of the distribution of water for irrigation to the respective States and territories"); *see generally* Erin Ryan, *Negotiating Federalism*, 52 B.C. L. REV. 1 (2011) (analyzing principles of federalism in context of state-federal bargaining). Congress may also defer to state law because it does not believe it has the authority to regulate. *California*, 438 U.S. at 654 ("it has heretofore been assumed that the authority of each State in the disposal of the water-supply within its borders was unquestioned and supreme"). In each of these ways, cooperative federalism enables the federal government to achieve its policy goals by collaborating with the states instead of imposing top-down federal standards.

Cooperative federalism is central to Reclamation's ability to carry out federal water projects in California and throughout the west.[3] Indeed, the United States Supreme Court has repeatedly affirmed the primacy of state water law as paramount

---

[3] Reclamation does not only operate in California. There are seventeen Reclamation States: California, Washington, Oregon, Idaho, Montana, North Dakota, South Dakota, Nebraska, Colorado, Kansas, Oklahoma, Texas, New Mexico, Utah, Arizona, Nevada, and Wyoming. *About Us: Fact Sheet*, UNITED STATES BUREAU OF RECLAMATION (accessed on October 19, 2023) https://www.usbr.gov/main/about/fact.html. West-wide, Reclamation can store up to 140 million acre-feet of water in 294 reservoirs for delivery to cities, farms, and industries in the seventeen different western states. *Id*. Some thirty-one million people depend on water supply contracts for municipal uses. *Id*. And one-fifth of all western farmers are able to irrigate over 10 million acres due to water supply contracts with Reclamation. *Id*.

to the function of western water. *See California*, 438 U.S. at 655–58 (collecting cases); *Kansas v. Colorado*, 206 U.S. 46, 94 (1907); *United States v. Rio Grande Dam & Irrig. Co.*, 174 U.S. 690, 702–703 (1899). The Trial Court's failure to consider the congressional deference owed to state water law constitutes reversible error and threatens the structure and security of Reclamation projects west-wide.

1.    **Congress expressly directs Reclamation to implement federal water projects in compliance with state water law.**

After federal investigations found that the physical development and population of this nation's west required water supply infrastructure beyond the means of yeoman farmers,[4] Congress passed the 1902 Act to drive forward the physical development of the western States by establishing the Bureau of Reclamation and authorizing the investigation, development, and construction of reclamation (irrigation) projects. Reclamation Act of 1902, ch. 1093, § 2, 32 Stat. 388 (1902). The federal government owned vast tracts of these mostly arid or semi-arid western states and territories, all "but an infinitesimal portion" of which were susceptible to agriculture without irrigation. RECLAMATION OF ARID LANDS, H.R. REP. NO. 794, at 2 (1902). These states had already begun to develop their own water rights regimes to facilitate the development and beneficial use of surface water from rivers, lakes, and streams. To avoid conflict with state water right laws,

---

[4] *See* J.W. Powell, *Report on the Lands of the Arid Region of the United States*, (2d. Ed., 1878) https://pubs.usgs.gov/unnumbered/70039240/report.pdf.

Congress included Section 8 in the 1902 Act to require Reclamation to abide by those state water laws. Reclamation Act of 1902, ch. 1093, § 8, 32 Stat. 390, 43 U.S.C. § 383 (2023); *California*, 438 U.S. at 650 ("Reflective of the 'cooperative federalism' which the Act embodies is § 8"). Section 8 recognizes state control over water development and use in order to "tend to [the] uniformity and perfection of water laws throughout" the western states. RECLAMATION OF ARID LANDS, H.R. REP. NO. 794, at 6 (1902).

Longstanding Supreme Court precedent holds that Section 8 of the 1902 Act requires the United States operate federal reclamation projects in conformity with state law absent a clear congressional directive to the contrary. In *California v. United States*, Reclamation applied for a water right permit to allow Reclamation impound surface water from the Stanislaus River in New Melones Reservoir on the Central Valley Project. 438 U.S. at 647. California's State Water Resources Control Board approved the applications subject to 25 conditions. *Id*. The United States opposed the conditions and sought a declaratory judgment that it could impound all available unappropriated water without complying with state law. *Id*. The Supreme Court rejected this argument after carefully analyzing the language of Section 8 of the 1902 Act against precedent showing the "consistent thread of purposeful and continued deference to state water law by Congress." *Id*. at 653.

The Supreme Court held that in the context of Reclamation's western projects, state water law governs project operations absent "clear congressional directives" to the contrary. *California*, 438 U.S. at 674. Its holding was based on a careful consideration of Congress's consistent history of deference to state water laws. *Id.* at 653–63. The Court found that the 1902 Act's language continued Congress's traditional deference to state water law by providing that the "Secretary of the Interior, in carrying out the provisions of this Act, **shall** proceed in conformity" with state laws "relating to the control, appropriation, use, or distribution of water . . . ." Reclamation Act of 1902, ch. 1032, § 8, 32 Stat. 390, 43 U.S.C. § 383 (2023) (emphasis added). In doing so, the Supreme Court expressly reversed this Court's conclusion that a state administrative agency may not impose conditions on Reclamation's water right permits. *California*, 438 U.S. at 647.

The Supreme Court's unequivocal determination that Section 8 of the 1902 Act requires deference to state water law was grounded in the principle of cooperative federalism. *California*, 438 U.S. at 675; *and see id.* at 650 ("If the term 'cooperative federalism' had been in vogue in 1902, the Reclamation Act of that year would surely have qualified as a leading example of it."). On remand, the Court directed the lower courts to consider cooperative federalism when analyzing how state law and federal law interact, and suggested that such considerations would likely require the lower courts to conduct additional fact-finding. *Id.* at 679.

Here, the Trial Court failed to adhere to the cooperative federalism principle adopted in Section 8 of the 1902 Act when it held that the ESA preempted the State of Oregon's water laws. The Trial Court should have carefully analyzed whether Section 7 of the ESA constitutes a clear congressional directive contrary to the Oregon Water Resources Department order at issue here and whether both sources of law could be harmonized. *See, e.g., United States v. State of California, State Water Resources Control Bd.*, 694 F.2d 1171, 1177–78 (9th Cir. 1982) (applying *California v. United States* and harmonizing state and federal law). Such an analysis would have revealed that Reclamation's obligations under the ESA, the 1902 Act, and Oregon state water law are perfectly compatible. Oregon state water law restricted Reclamation's discretion over water right operations—Klamath Project operations—affecting federally listed species. The Trial Court decision should be reversed for disregarding Section 8 and Supreme Court precedent to achieve a different result.

## 2. The Endangered Species Act does not repeal the Reclamation Act of 1902.

The Trial Court's holding implicitly repeals Section 8 of the 1902 Act and conflicts with the Supreme Court's holding in *Nat'l Ass'n of Home Builders v. Def. of Wildlife*, 551 U.S. 644 (2007) ("*Home Builders*"). There, the Supreme Court held that Congress did not intend for the ESA to implicitly repeal other federal statutes, and thus applies only if there is discretionary federal control over an action and not

where federal action is mandated pursuant to other federal statutes. *Id*. at 663. The Trial Court found that the 1902 Act does not contain the kind of mandatory language that the Supreme Court was concerned would result in an implicit repeal in *Home Builders*. 1-KWUA_ER-0035:20–36:24. The Trial Court's analysis is fundamentally flawed because it does not analyze, and gives no effect to, the mandatory language of Section 8. Instead, the Trial Court purports to distinguish *Home Builders* by relying on two factually inapposite cases that do not involve a mandatory directive as in Section 8. 1-KWUA_ER-0035:7–19 (citing to *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917 (9th Cir. 2008) ("*NWF v. NMFS*") and *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581 (9th Cir. 2014) ("*San Luis*")).

Neither *NWF v. NMFS* nor *San Luis* is relevant to whether the ESA applies here. *NWF v. NMFS* analyzed *Home Builders* in the context of whether the agencies could segregate their analysis of the effects of an agency action in a formal Section 7 consultation by evaluating only the discretionary actions. *NWF v. NMFS*, 524 F.3d at 927–29. The Ninth Circuit held that the agencies mischaracterized the statutes under *Home Builders*: "While the goals themselves may be mandatory, the agencies retain considerable discretion in choosing what specific actions to take in order to implement them." *Id*. at 929. Then, the Ninth Circuit applied *NWF v. NMFS* in *San Luis* and held that the U.S. Fish and Wildlife Service may not avoid analyzing the

impact of non-discretionary actions by segregating them from discretionary actions in the environmental baseline used to conduct Section 7 consultation under the ESA. *San Luis*, 747 F.3d at 639–40.

Unlike *NWF v. NMFS* and *San Luis*, the Trial Court was not considering whether the agencies properly analyzed an environmental baseline in a Section 7 consultation under the ESA. *Compare* 1-KWUA_ER-0034:11–36:17, *with NWF v. NMFS,* 534 F.3d at 927–29, *and San Luis*, 747 F.3d at 639–40. Instead, the Trial Court was considering whether state law, specifically made applicable to a federal agency by a federal law, is preempted by a later-enacted federal law. Thus, neither *NWF v. NMFS* nor *San Luis* supports the Trial Court's interpretation of the 1902 Act. 1-KWUA_ER-0036:1–2.

Rather, the Trial Court should have seriously considered the fundamental legal principle underpinning *Home Builders*—the canon against implied repeals. 551 U.S. 644, 662–64. The Supreme Court in *Home Builders* was concerned that a broad interpretation of the ESA would implicitly repeal other statutes by grafting on additional requirements that Congress did not require. *Id*. To avoid implied repeals, the Court held that Section 7 of the Endangered Species Act only applies where there is discretionary federal involvement or control. *Id.* Answering this question requires that the Trial Court adhere to this Court's *en banc* admonition that Reclamation projects are "governed by a complicated set of federal and state laws." *Natural Res.*

*Def. Council v. Jewell*, 749 F.3d 776, 785 n. 1 (9th Cir. 2014); *and see California v. United States*, 438 U.S. 645 (1978).

Here, Section 8 of the 1902 Act requires Reclamation to comply with state water law when constructing and operating Reclamation projects. Section 8's incorporation of Oregon state water law into Reclamation's water right operations limits Reclamation's discretion to change operations. By interpreting the 1902 Act to provide Reclamation with discretion to ignore state water rights law in operating the Klamath Project, the Trial Court implicitly repealed Section 8 of that Act in violation of *Home Builders*. *Home Builders*, 551 U.S. at 669. The Supreme Court has already held that the ESA is not a clear congressional directive repealing other statutes by implication; otherwise *Home Builders* would have had a different outcome. *Home Builders*, 551 U.S. at 662–63; *see also Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 596 (D.C. Cir. 2023) (analyzing Congress's intent by amending the ESA to "lighten[] the load"). Instead of implicitly repealing Section 8's clear mandate to comply with state law, the Trial Court should have carefully considered whether, under the applicable federal and state laws, Reclamation had sufficient discretion to trigger consultation under the ESA.

- 16 -

**B.** **The District Court's Holding Threatens Dramatic Implications For Reclamation Contracts Throughout California and the West.**

The Trial Court's order upsets the careful balance struck by Congress in the 1902 Reclamation Act. Congress deliberately directed Reclamation to develop the western states by constructing and operating reclamation projects in conformity with state water law, and then enter into binding water supply contracts to deliver the water supply developed by such projects for beneficial use by cities and farms. Reclamation Act of 1902, ch. 1032, § 4, 32 Stat. 389 (1902); 43 U.S.C. §§ 411, 419 (2023); *California*, 438 U.S. at 650.

As Congress intended, its decision paved the way for the communities and economies of the western United States. For example, the thirty nine Reclamation projects in the Columbia River Basin enabled the physical development and population of a stretch of the Pacific Northwest across Oregon, Washington, Idaho, Montana, and Wyoming. *Columbia-Pacific Northwest Region*, UNITED STATES BUREAU OF RECLAMATION (May 11, 2023) https://www.usbr.gov/pn/about/index.hmtl. California's Central Valley Project developed the major surface water resources of California, enabling its growth and development into an agricultural superpower whose overall economy ranks larger than all but several other entire nations. *About the Central Valley Project*, UNITED STATES BUREAU OF RECLAMATION (Aug. 24, 2022) https://www.usbr.gov/mp/cvp/about-cvp.html; *see generally San Luis*, 747 F.3d

581, 593–94 (9th Cir. 2014) (collecting cases describing the Central Valley Project). Reclamation's legacy and success was enabled by Congress's direction that Reclamation "must be amenable to the law of the state, if there is to be a proper administration of the water law as it has developed over the years" in the west. *California*, 438 U.S. at 678–79.

These projects also owe their success to Congress's intentional choice to require Reclamation to enter into binding, long-term contracts for water supplied by federal reclamation projects. 43 U.S.C. §§ 419, 423e, 485h(e) (2023). A wide array of individuals and entities rely on these contracts throughout California and the western United States. *See* Richard Roos-Collins, *Voluntary Conveyance of Water Project Rights*, 13 ECOLOGY L. Q. 733, 834–35 (1987) (describing the various types of reclamation contracts). They do so because contracts define the parties' respective rights and obligations—setting the parties' expectations for how they will behave relative to each other. *See id.* (describing contractual rights); *see also* L.L. Fuller & William Perdue, Jr., *The Reliance Interest in Contract Damages*, 46 YALE L.J. 52, 58 (1936) (explaining the "will" theory of contracting). If one of the parties does not meet those expectations, there are legal consequences. Tucker Act, 28 U.S.C. § 1491(a)(1) (2023); *Stockton East Water Dist. v. U.S.,* 583 F.3d 1344, 1364 (Fed. Cir. 2009) (holding Reclamation's failure to meet contract delivery requirements a breach of contract); Restatement (Second) of Contracts § 344 (Am.

Law Inst. 1979).  Indeed, one of the most fundamental expectations held by parties to water supply contracts with Reclamation is that Reclamation will deliver water in accordance with state water law.  *Stockton East Water Dist.*, 583 F.3d at 1364–68; *see also* James Gordley, *The Myth of "Expectation Interest"*, 52 U. PAC. L. REV. 77 (2020) ("the remedies for breach of contract can be explained by the same two principles: that each party be held responsible for the risks that he has been compensated to assume, and a party should not be held to an agreement to which he never consented").

The ESA cannot be understood to upset Congress's careful decision to require Reclamation enter into permanent contracts for the delivery of water in conformity with state water law, which do not include provisions incorporating future ESA obligations.  Allowing Reclamation to avoid performance of that contract because of a later-enacted law would make contracting pointless.  *Natural Res. Def. Council v. Norton*, 236 F. Supp. 3d 1198, 1218 (E.D. Cal. 2017) ("This cannot be what Congress intended to be the result of the Section 7 consultation requirement, and the Court will not interpret the re-consultation regulation [] to produce such an absurd result.").  That is especially true if the later-enacted law does not include a clear statement of congressional intent to repeal the former.  *Home Builders,* 551 U.S. 644, 662–64 (2007) ("repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest")

(internal quotations omitted). The Trial Court's holding has the effect of placing risk on the contractors that they plainly did not bargain for when entering long-term or permanent contracts for water supply from projects built by Reclamation and carried out under state water rights law.

## IV.  CONCLUSION

On behalf of *Amici*'s members and constituents, we respectfully ask the Ninth Circuit to direct the Trial Court to apply the state water laws that federal law incorporates into the operation of the Klamath Project pursuant to Section 8 of the 1902 Act. The Supreme Court's holdings in *California v. United States* and *Home Builders* require reversal of the Trial Court's decision in order to effectuate Congress's intent in enacting Section 8 of the 1902 Act and to ensure that the expectations of parties who contract with the federal government receive the benefits they bargained for.

DATED:  October 23, 2023          DOWNEY BRAND LLP


By:    */s/ Meredith E. Nikkel*
          MEREDITH E. NIKKEL
          *Attorneys for* ASSOCIATION OF
          CALIFORNIA WATER AGENCIES *and
          the* CALIFORNIA FARM BUREAU
          FEDERATION

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,894 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

DATED:  October 23, 2023          DOWNEY BRAND LLP


By:      */s/ Meredith E. Nikkel*
_____
        MEREDITH E. NIKKEL
        *Attorneys for* ASSOCIATION OF
        CALIFORNIA WATER AGENCIES *and*
        *the* CALIFORNIA FARM BUREAU
        FEDERATION

**CERTIFICATE OF SERVICE**

I hereby certify that on [insert date], I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED: October 23, 2023        DOWNEY BRAND LLP

By:     */s/ Meredith E. Nikkel*
           MEREDITH E. NIKKEL
           *Attorneys for the* ASSOCIATION OF
           CALIFORNIA WATER AGENCIES *and*
           *the* CALIFORNIA FARM BUREAU
           FEDERATION